**NATIONAL SURETY CORPORATION,**
Appellant,

v.

**R. E. RICE, Appellee.**

Court of Appeals of Kentucky.

June 6, 1969.

Armer H. Mahan, Louisville, for appellant.

Joe A. Wallace, Wallace & Webb, Louisville, for appellee.

CULLEN, Commissioner.

National Surety Corporation, as surety on performance bonds of Albro Hall, a building contractor doing business as Highgate Construction Company, sustained a loss of $6,673.85 when Hall went bankrupt. Previously, before writing the bonds, National had obtained from R. E. Rice, a creditor of Hall's, a subordination agreement under which Rice agreed to subordinate, to any claim of National on bonds written for Hall, a $10,000 debt owed Rice by Hall. The agreement provided among other things that Rice would not accept any payments "on account of" the indebtedness until such time as National notified Rice that Hall's obligations to National had been performed. The agreement also provided that in the event of a breach of the agreement by Rice, he would be liable to National for any loss sustained *by it by reason of having executed bonds for Hall.*

Alleging that Rice had accepted payments on the $10,000 debt in violation of the subordination agreement, National brought this action against Rice to recover its $6,673.85 loss. The circuit court, being

of the opinion that the evidence showed conclusively that Rice had not received any payments on the *principal* of the debt, and being of the further opinion that payments on principal were the only ones prohibited by the subordination agreement, directed a verdict for Rice and entered judgment dismissing the action. National has appealed from that judgment.

The circumstances of this case are somewhat out of the ordinary. In May 1960 Rice loaned Hall $10,000, taking a note calling for repayment two years from date, *without interest*. Simultaneously with the execution of the note, the parties executed a separate contract document which recited that "In consideration for a loan of $10,000 evidenced by a note signed by Highgate Construction Company and/or Albro Hall" Rice was being employed by the company and/or Hall as an outside salesman for a period of two years at a salary of $200 per month. Rice thereafter was paid the $200 per month from May 1960 through April 1962. Hall went bankrupt in June 1962 and in the bankruptcy proceedings Rice filed a claim for salary for May 1962 and it was allowed as a preferred claim.

In February 1961, nine months after Rice had loaned the $10,000 to Hall and had started receiving the monthly payments from Hall, National was requested by Hall to become surety on some performance bonds for him, on building projects on which he had bid. National asked Hall to submit a financial statement, which he did, listing the $10,000 debt owed to Rice. National then prepared a form of subordination agreement and sent an agent to Rice with the request that he sign the agreement. Rice did so, on February 20, 1961. Subsequently, on May 21, 1961, National wrote a bond for Hall, and on October 21, 1961, wrote another bond for him. In the meantime Rice was continuing to receive $200 per month from Hall. It appears that the main loss suffered by National was on the October 21 bond. It will be noted that Rice received only $1,200 in payments from Hall after the date of execution of that bond.

The evidence for National was that it was not aware of the employment agreement between Hall and Rice when the subordination agreement was executed, and did not learn of the agreement until after the bankruptcy. On the other hand, Hall and Rice both testified that they told National's agent about the employment agreement, and in fact showed it to him, before the subordination agreement was executed. However, under the view of the case taken by the circuit court this was an immaterial issue.

There was evidence tending to show that the employment agreement was not bona fide; that Rice did no work under it and the parties never intended that he do any work under it. However, Rice and Hall both testified that Rice obtained a large construction job for Hall and lined up prospects for several other jobs. So here there was another issue of fact. But again it was immaterial under the pleadings and under the construction placed by the circuit court on the subordination agreement.

As hereinbefore stated, National pleaded only that Rice had received payments "on account of" the $10,000 debt in violation of the express terms of the subordination agreement. National did not assert any theory of equitable rights growing out of fraud, misrepresentation or concealment; nor did National make any claim that the salary payments amounted in reality to payments of usurious interest and therefore the payments to the extent that they exceeded the legal rate of interest should be treated in law as having been made on the principal. National does not even suggest that payment of *interest* was prohibited by the subordination agreement.

National's whole case is pitched on the words "on account of," in the subordination agreement. National says that the words embrace any kind of a *relationship* between the payment and the debt; that the employment agreement states on its

face that it was executed in consideration for the $10,000 loan; that the salary payments were being made *because* of the loan; therefore, the salary payments were made "on account of" the loan.

 The circuit judge construed the subordination agreement as prohibiting only payments on the *principal* of the debt, in effect interpreting the words "on account of" to mean "on *the* account of." We think that construction is correct.

While the subordination agreement in one paragraph uses the words "on account of the indebtedness" without immediate qualification, that paragraph deals with priorities in a *distribution of the assets* of Hall. In the paragraph of the agreement that deals specifically with making payments during continuation of business by Hall the prohibitions are against receiving payments "on account of *principal* of said indebtedness" (our emphasis), or that will *reduce* the indebtedness, or that will *change* or *liquidate* the indebtedness.

The undisputed evidence is that the $200 monthly payments from Hall to Rice were not applied to the principal of the $10,000 debt, did not reduce, change or liquidate the debt, and never were intended to. Furthermore, the $10,000 note was adjudicated in the bankruptcy proceeding as due in full, and National not only participated in that proceeding but took under the subordination agreement the dividend paid in bankruptcy on that note. So National could not now assert that the principal was in fact reduced by the $200 payments. See 9 Am.Jur.2d, Bankruptcy, sec. 507, p. 391.

It may have been that the employment agreement was merely a subterfuge for the payment of 24 percent interest on the loan. But the subordination agreement does not say anything about interest, high or low. So long as the payments did not reduce the principal of the debt it makes no difference how exorbitant a rate of interest they may have represented, as concerns whether there was a *violation of the*

*contract*, which is the only thing that National claims there was.

The judgment is affirmed.

All concur.